# EXHIBIT C

**KELLEY DRYE & WARREN LLP**

A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**

**NEW YORK, NY 10178**

(212) 808-7800

WASHINGTON, DC
LOS ANGELES, CALIFORNIA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICE
MUMBAI, INDIA

FACSIMILE
(212) 808-7897
www.kelleydrye.com

EUGENE T. D'ABLEMONT
DIRECT LINE: (212) 808-7830
EMAIL: edablemont@kelleydrye.com

May 15, 2013

**VIA FEDERAL EXPRESS
AND EMAIL (pandrews@theharmanfirm.com)**

Peter Andrews, Esq.
The Harman Firm, PC
200 West 57th Street
Suite 900
New York, NY 10019

Re: *Justiniano et al v. Phoenix Beverages et al.*,
No. 13-cv-2332 (LTS) (JLC) (S.D.N.Y.)

Dear Mr. Andrews:

      I have your email of May 14, 2013, responding to my letter to Mr. Walker Harman of the Harman Law Firm, dated May 10, 2013, with Exhibits 1 through 4.

      In my letter, I set forth with a high degree of specificity the facts and law as to why our client Phoenix Beverages enjoyed the Motor Carrier Act exemption of the Fair Labor Standards Act ("FLSA") with respect to its Beer Delivery Truck drivers and as to why the very limited application of the New York Labor Law ("NYLL") to those drivers was mathematically irrelevant for purposes of the above action. With my letter, I enclosed our August 2012 presentation to the United States Department of Labor ("DOL") in response to the written questions it asked as part of its investigation for evaluating the applicability of the "Motor Carrier Act exemption" of the FLSA to Phoenix Beverages operation.

      With the exhibits I attached to my letter to Mr. Harman, I enclosed a copy of the Second Circuit Court of Appeals decision in *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217 (2d Cir. 2002), where the Second Circuit upheld the lower Court's (S.D.N.Y. Judge Colleen McMahon) decision granting summary judgment to Dutchess Beer. I noted that the facts in that case reflected the very same facts of the inter-state operations of Phoenix Beverages. I further noted that these facts would be true of every beer distributor in the Greater Metropolitan Area. This is so because there no longer are, and have not been for over 30 years, major breweries in

NY01\DAblE\1813028.1

**KELLEY DRYE & WARREN LLP**

Peter Andrews, Esq.
May 15, 2013
Page Two

New York State and, certainly none, in the Greater Metropolitan Area. As a result, the product comes from without New York State and returns, albeit in a different form.

   I brought all these facts, the applicable law, and the DOL investigation to your firm's attention so that you not knowingly pursue any longer a suit lacking in any merit and thereby not waste the Court's time and energy and the time, expenses, and legal fees of Phoenix Beverages.

   I was therefore disappointed by your response where you unequivocally stated that "we strongly disagree with your contention that plaintiffs' complaint is frivolous" and "in the meanwhile, please be advised that we have no attention of discontinuing this action". But, you offer no facts or case law to support these statements which make them just as lacking in merit and frivolous as your Complaint in this suit.

   I am gratified that you are familiar with the requirements of Rule 11, so much so that you directed me to a Law Journal article on the subject for which I thank you. However, it seems you may have read only half of the article, ending before the author discussed the implications of the Second Circuit decision in the *Star Mark* case when a party receives such a detailed letter as I sent your colleague Mr. Harman, without a formal motion under Rule 11(c)(2). There, the article made the following observation:

> "Now, the lawyer who receives such a letter (which itself is likely to be sent more frequently) must carefully analyze whether there is any risk of sanctions and satisfy herself that there is a sound factual and legal basis at that time for the allegations that have been made and/or the legal theories being pursued. In most instances, the lawyer should not have difficulty concluding that she can proceed with the litigation because she should already have considered the adequacy of the legal and factual foundation for the allegations prior to serving the challenged pleading. But the sanctions letter, rather than a formal motion, will serve as a reminder and second chance for the lawyer to take a fresh look at those issues. In situations where the lawyer has second thoughts about the case after receiving the sanctions letter, it may be wise to consult with ethics counsel or another specialist in the field, whether within the lawyer's firm or independent, before deciding whether to continue with or withdraw from the representation."

   My reference to Rule 11 was to put your firm on notice of the legal consequences of proceeding with this suit. The purpose was not to start the 21 day "safe harbor" period. It was not to obtain sanctions against you or Mr. Harman or attorney's fees. It was to cause you to do

**KELLEY DRYE & WARREN LLP**

Peter Andrews, Esq.
May 15, 2013
Page Three

the due diligence you should have done before filing this frivolous action. Based on the information I provided you in my May 10, 2013 letter, it should not have taken longer than the seven (7) days from my May 10 letter for you and Mr. Harman to decide whether there is any factual or legal basis for you to continue this suit. If you decide there is none, then we can stipulate to an end of this action. If you continue to proceed with the case, please let me know and we will prepare our Rule 12(b) notice and file and serve it on May 30, along with our Rule 11 motion.

       Thank you.

                              Very truly yours,

                              Eugene T. D'Ablemont

ETD:pnr

cc:    Robert Crotty, Esq.