UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EMMANUEL G. JUSTINIANO, JOSE NIEVES, JOSE BARBOSA, DAHEED WILLIS, ANTHONY KEITT, FRANK FODERA, JOSHUA MOSS, OSCAR PUERTA, LUIS ARENAZA, GUILLERMO MUNOZ, MILTON LAVERDE, WILLIE S. BREWER, ISMAEL FRANCISCO, STEVE M. NG, MANUEL SANTOS, JULIO RIVERA, FREDDY VELEZ, BRYONT A LOPEZ, MIGUEL CABREJA, JUAN VEVAS, TERRENCE JONES, NICOLAS SALGADO, LUIS A. VEGA, LOUIS TELESE, KENNETH WARING, ANTONY G. HILL, JOSE GOMEZ ROSARIO, RODERICK MASHALL, JOSE BLANCO, DAVID BAEZ, KENYA EARLY, SAMMY HERNANDEZ, NELSON MINYETY, BILL DELVIN, EDWIN J. RAMIREZ CESPEDES, BENTO RODRIGUEZ, PAUL STARAPOLA, ANDRES REYES, JESUS A. MARTINEZ, DAVID BEACH, JONATHAN DELROSARIO, JAMES SHAW, GARFIELD GAMMON, DESEAN ALLEN, DERREK HUGHES, JORGE A. MILANES, *and* CARMELO NYANDUGAR, *each individually and on behalf of all other individuals similarly situated*,

                Plaintiffs,

v.

PHOENIX BEVERAGES, INC., WINDMILL DISTRIBUTING COMPANY LP, d/b/a PHOENIX/BEEHIVE, RODB, LLC, LONGFENG TRUCKING, LLC, PHOENIX BEVERAGES MTO, LLC, FORBEE CAPITAL KEG FUND, LLC, HEINEKEN NORTH AMERICA, INC., HEINEKEN USA INCORPORATED, RODNEY BREYMAN, GREGORY BREYMAN, PAUL ROSSI, JOSEPH STANICH, *and* GEORGE STRADA,

                Defendants.

Case No. 13-CV-2332 (LTS) (JLC)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

# TABLE OF CONTENTS

                                                                                                               **Page**

PRELIMINARY STATEMENT ........................................................................................... 1

SUMMARY OF ARGUMENT ........................................................................................... 1

FACTUAL STATEMENT .................................................................................................. 2

ARGUMENT ....................................................................................................................... 4

I.   PLAINTIFFS' COUNSEL SHOULD BE SANCTIONED PURSUANT TO FED. R. CIV. P. 11 ............................................................................................................ 4

   A.   Plaintiffs' Claims Are Not Warranted By Existing Law ....................... 5

      1.   Phoenix is Exempt From the Overtime Pay Requirements of the FLSA .................................................................................. 5

      2.   Plaintiffs Have No Claim Under State Law Because Their Salaries Far Exceed the Overtime Pay Requirements Under New York State Law ............................................................................... 8

      3.   The Retaliation Claims ........................................................ 9

      4.   The Standard for Rule 11 Sanctions is "Objective Unreasonableness" ................................................................ 9

CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Barth v. Kaye,*
  178 F.R.D. 371 (N.D.N.Y. 1998) ................................................................................ 4

*Bilyou v. Dutchess Beer Distribs., Inc.,*
  300 F.3d 217 (2d Cir. 2002) ............................................................................... passim

*Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc.,*
  28 F.3d 259 (2d Cir. 1994) .......................................................................................... 4

*Cohen v. Bane,*
  853 F. Supp. 620 (E.D.N.Y. 1994) ............................................................................ 10

*Eastway Constr. Corp. v. City of N.Y.,*
  762 F.2d 243 (2d Cir. 1985), *overruled on other grounds by Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58 (2d Cir. 2012) .................................................. 10

*Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.,*
  186 F.3d 157 (2d Cir. 1999) ........................................................................................ 4

*Ted Lapidus, S.A. v. Vann,*
  112 F.3d 91 (2d Cir. 1997) .......................................................................................... 9

**STATUTES**

29 U.S.C. § 213(b) ............................................................................................................ 2, 5

49 U.S.C. § 31502(b) ............................................................................................................ 5

Motor Carrier Act, Pub. L. No. 74-255, 49 Stat. 543 (1935) ............................................... 1

N.Y. Lab. Law § 652 ............................................................................................................ 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 11(b) ............................................................................................................. 4

J. Sulds, 3 *New York Employment Law*, § 35.03[3][a] (Matthew Bender & Co., Inc. 2d ed. 2012) ......................................................................................................................... 8

Letter Opinion, RO-10-002 (N.Y. State Dep't of Labor June 30, 2010) *available at* http://www.labor.ny.gov/legal/counsel/pdf/Overtime/RO-10-0025.pdf .......................... 8, 9

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (2009) ................................................ 1, 8

## PRELIMINARY STATEMENT

Defendants Windmill Distributing Company, LP, d/b/a Phoenix/Beehive, Phoenix Beverages, Inc., RODB, LLC, Longfeng Trucking, LLC, Phoenix Beverages MTO, LLC, Forbee Capital Keg Fund, LLC, Heineken USA Incorporated, Rodney Brayman,[1] Gregory Brayman,[2] Paul Rossi, Joseph Stanich, and George Strada (collectively "Phoenix" or "Defendants") submit this memorandum of law in support of their motion for sanctions against Plaintiffs' attorneys Walker G. Harman, Jr. and Peter J. Andrews of The Harman Firm, P.C. (collectively, "Harman") pursuant to Rule 11 of the Federal Rules of Civil Procedure.

## SUMMARY OF ARGUMENT

Plaintiffs are delivery drivers who are or were employed by Phoenix. Plaintiffs allege that Phoenix failed to comply with overtime pay requirements under the Fair Labor Standards Act ("FLSA"). Under controlling Second Circuit authority, however, Plaintiffs are exempt from the overtime pay requirements in the FLSA pursuant to the Motor Carrier Act, Pub. L. No. 74-255, 49 Stat. 543 (1935). *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217 (2d Cir. 2002). Their FLSA overtime claims, therefore, are meritless. In addition, Plaintiffs' state law claims are baseless because their salaries far exceed the overtime pay requirements under New York State Law. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (2009).

Rule 11 was designed to prevent the pursuit of claims when a litigant knows that the claims have no support. Harman should be sanctioned under Rule 11 for filing the Complaint and the Amended Complaint, knowing that the claims are precluded by *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217 (2d Cir. 2002), the controlling authority in the Second Circuit.

---

[1] Brayman is incorrectly spelled in the case caption as "Breyman."
[2] Brayman is incorrectly spelled in the case caption as "Breyman."

## FACTUAL STATEMENT

Harman specializes in employment law and should be familiar with *Bilyou*, the controlling legal authority that is dispositive of Plaintiffs' claims here. Crotty Decl.[3], Ex. 5. Notwithstanding, on April 9, 2013, Harman, on behalf of the five original Plaintiffs, filed the original Complaint in this action alleging five causes of action, the first for failure to pay wages under the FLSA, the second for retaliation under the FLSA, the third for failure to pay overtime under the NYLL, the fourth for failure to pay wages owed under the NYLL, and the fifth for retaliation under the NYLL. Dkt. #[4] 1. As set forth in Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, each of these claims fails as a matter of law. Crotty Decl.[5], Exs. 1-4.

On May 10, 2013, Defendants' counsel sent Harman a letter setting forth in detail why *Bilyou* is controlling authority and dispositive of Plaintiffs' claims. *Id.*, ¶ 2 & Ex. 3. Defendants' letter also stated that in July and August, 2012, the Wage and Hour Division of the U.S. Department of Labor ("DOL") inquired about "the applicability of the 'Motor Carrier Act exemption' of the Fair Labor Standards Act, found at 29 U.S.C. § 213(b)(1) to the operations of [Phoenix]." *Id.* In response to the DOL's inquiry, Phoenix submitted two letters, dated August 8 and August 21, 2012. *Id.* The August 8 letter makes specific reference to the Second Circuit Court of Appeals decision in *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217 (2d Cir. 2002). *Id.* The August 21 letter describes in detail Phoenix's delivery operations, which are substantively identical to the Dutchess Beer Distributors operations in *Bilyou*, and demonstrates that under *Bilyou*, the Motor Carrier Act exemption of the FLSA, 29 U.S.C. § 213(b)(1), applies to Phoenix's operations. *Id.* Defendants further informed Plaintiffs' counsel that the DOL has made no further inquiry. *Id.*

---

[3] "Crotty Decl." refers to the Declaration of Robert E. Crotty in support of the present motion.
[4] "Dkt. #" refers to entries on the Court's Docket for this case.
[5] "Crotty Decl." refers to the Declaration of Robert E. Crotty in support of the present motion.

By email dated May 14, 2013, Harman's associate Peter Andrews responded to Defendants' May 10 letter that they had "no intention of discontinuing this action ... ." *Id.*, ¶ 3 & Ex. 3. On May 15, 2013, Defendants' counsel sent a letter to Mr. Andrews reiterating Phoenix's position and putting him and Harman on notice that, should they continue this suit, Defendants would move to dismiss the claims pursuant to Rule 12(b) and would seek sanctions against Harman pursuant to Rule 11. *Id.*, ¶ 4 & Ex. 3.

Also on May 15, 2013, Plaintiffs filed their Amended Complaint, which added forty-two (42) Plaintiffs but alleged the same five causes of action. Dkt. # 10. On May 30, 2013, Defendants timely filed their Motion to Dismiss Plaintiffs' Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) and, alternatively, Fed. R. Civ. P. 12(d). *See* Dkt. ## 11-14. Defendants incorporate as if fully set forth in this motion the factual and legal arguments presented in the Motion to Dismiss, the supporting Declarations, and the Memorandum of Law in support of the Motion, which are attached as Exhibits 1-4 to the Crotty Declaration submitted in support of this Rule 11 Motion.

To date, Harman has refused to withdraw this lawsuit, ignoring Defendants' specific Rule 11 warnings. Crotty Decl., ¶ 7. Accordingly, Defendants bring the present motion seeking their attorneys' fees and costs incurred in defending this action, including those associated with Defendants' Motion to Dismiss.

This case has been designated for inclusion in the S.D.N.Y. Pilot Project for Complex Civil Cases. Dkt. # 2. As such, pursuant to this Court's Individual Practices, the Court will schedule a conference in accordance with option "(c)" of subdivision A.4. of the Pilot Project Motion Procedures. Plaintiffs will have another opportunity at or before that conference to withdraw their Amended Complaint.

## ARGUMENT

### I. PLAINTIFFS' COUNSEL SHOULD BE SANCTIONED PURSUANT TO FED. R. CIV. P. 11

Rule 11 imposes an affirmative duty on attorneys and litigants to conduct a reasonable inquiry into the validity of a pleading before it is signed: "Rule 11 'requires litigants to 'stop-and-think' before initially making legal or factual contentions.'" *Barth v. Kaye*, 178 F.R.D. 371, 380 (N.D.N.Y. 1998) (quoting Fed. R. Civ. P 11, *Advisory Committee Notes* (1993 Amendment)).

Rule 11 provides that, by presenting a pleading or motion to the court, an attorney:

> certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims . . . are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b).

Rule 11 sanctions are appropriate where a person signs a pleading "without a belief, formed after reasonable inquiry," that the pleading is not frivolous. *Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir. 1994). A pleading is frivolous if it is "clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 167 (2d Cir. 1999) (citation omitted).

Here, any reasonable inquiry by Harman, who specializes in employment law, about the law and facts would support only the conclusion that Plaintiffs' claims have no chance of success under the Second Circuit's decision in *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217 (2d Cir. 2002). Moreover, prior to Plaintiffs' filing of the Amended Complaint, Defendants' counsel sent Harman a letter notifying him that Plaintiffs' claims are unwarranted based on *Bilyou's* controlling precedent. Nevertheless, Harman filed the Amended Complaint alleging claims that have no support.

### A.  Plaintiffs' Claims Are Not Warranted By Existing Law

#### 1.  Phoenix is Exempt From the Overtime Pay Requirements of the FLSA

As set forth in Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, Plaintiffs' FLSA claims fail as a matter of law. *See* Crotty Decl., Ex. 4 at 11-18. Under the Motor Carrier Act, Phoenix is a "motor private carrier"; as such, the Secretary of Transportation sets the "maximum hours of service" for Phoenix's delivery drivers. Phoenix's delivery drivers, therefore, are exempt from the FLSA.

The FLSA exempts from its overtime pay requirements any employee "with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to [49 U.S.C. §] 31502" (the Motor Carrier Act). 29 U.S.C. § 213(b)(1). Pursuant to his authority under the Motor Carrier Act, the Secretary of Transportation may establish the "qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier ... ." 49 U.S.C. § 31502(b)(2).

Phoenix fits squarely within the definition of a "motor private carrier" so long as the transportation in which it engages "is as provided in section 13501" – i.e., that the beer and liquor products that Phoenix distributes are transported in the United States between a place in a

State and a place in another State or a place in the United States and a place in a foreign country. *See* Crotty Decl., Ex. 4 at 11-12. The Second Circuit has interpreted conclusively that section 13501 covers intrastate transportation of property that is part of a "'practical continuity of movement' in the flow of interstate commerce." *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217 (2d Cir. 2002). *Bilyou*, therefore, is dispositive of Plaintiffs' allegations here.

In *Bilyou*, like Plaintiffs here, plaintiff Bilyou had worked as a delivery route driver for DBD. *Id.* at 219. (Bilyou was terminated for cause.) *Id.* He alleged that he regularly worked more than 40 hours per week and was entitled under the FLSA to overtime pay of one and one-half times his regular rate of pay. *Id.* The Second Circuit affirmed the District Court's order granting summary judgment dismissing the complaint because defendant Dutchess Beer Distributors' ("DBD") empty container return operations were in interstate commerce and, therefore, its delivery drivers who were involved in that operation were exempt from other FLSA overtime pay requirements. *Id.* at 224.

DBD conducts its business – as do all beer distributors – substantially like Phoenix. DBD received beer from outside New York State and distributed beer and other beverages to its customers in the Hudson Valley region of New York State. *Id.* at 219. DBD ran its distribution operation out of a processing center in Poughkeepsie, New York, and a warehouse in Kingston, New York. *Id.* Next to DBD's Poughkeepsie center was a recycling facility operated by Mid-Hudson Aluminum Can-Recycling, Inc. ("Mid-Hudson"), which was owned by the owners of DBD and processed only DBD products. *Id.* As set forth in Defendants' Motion to Dismiss, Phoenix's operation is legally the same as DBD's. *See* Crotty Decl., Ex. 4 at 13-16; Ex. 2 at ¶¶ 24-48. In particular, DBD's return of empty bottles, cans, kegs, and pallets mirrors Phoenix's operations here. *Id.*

In *Bilyou*, the plaintiff argued that DBD's carriage of goods did not meet the requirements of 49 U.S.C. § 13501 because it was not "between a State and a place in another State." *Id.* at 223. The Second Circuit held, however, that "[e]ven if a carrier's transportation does not cross state lines, the interstate commerce requirement is satisfied if the goods being transported within the borders of one State are involved in a 'practical continuity of movement' in the flow of interstate commerce." *Id.* (citing cases). "Whether the transportation is of an interstate nature can be 'determined by reference to the intended final destination' of the transportation when that ultimate destination was envisaged at the time the transportation commenced." *Id.* at 223-24. In other words, "[t]he intent at the time transportation commences 'fixes the character of the shipment for all the legs of transport within the United States.'" *Id.* at 224 (citation omitted).

The Second Circuit concluded that:

> In the course of delivering products to retail customers, Bilyou regularly picked up glass, plastic, and aluminum empties, as well as refillable containers, and carried them to Mid-Hudson's facility in Poughkeepsie for further shipment several times a week to destinations outside the State. Although Bilyou's carriage of the empties took place entirely within the State of New York, his carriage was merely one leg of a route to an out-of-state destination. His segment of the transportation of those empties was part of the interstate movement of goods.

*Id.* Thus, the Court determined that DBD satisfied the interstate commerce requirement of the Motor Carrier exemption and was exempt from the overtime requirements of the FLSA.

As in *Bilyou*, Plaintiffs here collect empty product containers and return them to the recycling center of Phoenix's owned affiliate R. Mack, Inc. Crotty Decl., Ex. 2 at ¶¶ 24-25. From there, all recycled products are shipped to out-of-state locations. *Id.*, ¶¶ 26, 27-35. In addition, Plaintiffs deliver and collect returnable products and refillable containers that are returned by Phoenix across state lines to brewers and wineries throughout the United States and

-7-

in foreign countries. *Id.*, ¶¶ 26, 36-48. Thus, from the moment it receives the returnable and refillable containers, Phoenix has a "fixed and persisting intent" to return the refillable containers to out-of-state breweries. *See Bilyou*, 300 F.3d at 225. *Bilyou* is squarely on point here and is controlling precedent. Under the Second Circuit's holding in *Bilyou*, therefore, the motor carrier exemption to the FLSA applies here and Plaintiffs' FLSA claims are unwarranted. Plaintiffs' refusal to withdraw the Amended Complaint, therefore, should be sanctioned.

> **2.   Plaintiffs Have No Claim Under State Law Because Their Salaries Far Exceed the Overtime Pay Requirements Under New York State Law**

Plaintiffs' third and fourth causes of action under the NYLL also are baseless because Plaintiffs' salaries during the course of their employment far exceeded the wage and overtime pay requirements under New York law. Pursuant to the New York Codes, Rules and Regulations, title 12, section 142-2.2:

> An employer shall pay an employee for overtime at a wage rate of 1½ times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 USC 201 et seq., the Fair Labor Standards Act of 1938, as amended .... In addition, an employer shall pay employees subject to the exemptions of section 13 of the Fair Labor Standards Act, as amended, ... overtime at a wage rate of 1½ times the basic minimum hourly rate.

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

Accordingly, for employees exempt from the FLSA's overtime provisions, such as Plaintiffs, New York's overtime provisions are deemed met if their salaries exceed the product of the minimum statutory hourly wage, times the sum of all hours actually worked in excess of forty hours in a week. *See* J. Sulds, 3 *New York Employment Law*, § 35.03[3][a] (Matthew Bender & Co., Inc. 2d ed. 2012). New York's Minimum Wage Act provides that the minimum hourly rate is $7.25. N.Y. Lab. Law § 652. *See also* Letter Opinion, RO-10-0025 (N.Y. State

Dep't of Labor June 30, 2010), *available at*

http://www.labor.ny.gov/legal/counsel/pdf/Overtime/RO-10-0025.pdf.

Here, the salary paid to each Plaintiff far exceeded the New York required minimum of time and a half of the basic minimum wage for hours worked in excess of forty in a week (Crotty Decl., Ex. 2 at ¶ 54), a fact readily ascertainable upon any reasonable inquiry by Harman prior to filing the Complaint and of which he was explicitly made aware in Defendants' May 10 letter prior to filing the Amended Complaint (Crotty Decl., ¶ 2 & Ex. 3). As such, Plaintiffs' NYLL claims for wage and overtime compensation are frivolous.

### 3. The Retaliation Claims

Because Plaintiffs could have no reasonable expectation under *Bilyou* with respect to their FLSA and NYLL claims, their retaliation claims are also baseless. *See* Crotty Decl., Ex. 4 at 19-21.

### 4. The Standard for Rule 11 Sanctions is "Objective Unreasonableness"

In assessing a claim for Rule 11 sanctions, courts apply a standard of "objective unreasonableness." *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997). The Second Circuit has made it clear that a mere profession by an attorney of his or her *subjective* good faith in signing – or later advocating – a baseless pleading is not sufficient to protect against sanctions under the Rule:

> Simply put, subjective good faith no longer provides the safe harbor it once did . . . . [A] showing of subjective bad faith is no longer required to trigger the sanctions imposed by the rule. Rather, sanctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law . . . . [W]here it is patently clear that a claim has

-9-

> absolutely no chance of success under the existing precedents, and
> where no reasonable argument can be advanced to extend, modify
> or reverse the law as it stands, Rule 11 has been violated.

*Eastway Constr. Corp. v. City of N.Y.*, 762 F.2d 243, 253-54 (2d Cir. 1985) (emphasis in original), *overruled on other grounds by Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58 (2d Cir. 2012).

In cases such as this one, "where it is clear that a party's attorney should have known that there [is] absolutely no possibility of prevailing on the merits given the precedent against the claims, sanctions are necessary to deter . . . counsel from wasting the time and resources of the adversaries as well as the court." *Cohen v. Bane*, 853 F. Supp. 620, 629 (E.D.N.Y. 1994).

## CONCLUSION

For all the foregoing reasons, the Court should enter an Order sanctioning Harman and requiring him to pay Defendants' costs and legal fees incurred in defending this action, and granting any other relief as the Court deems just and proper.

Dated: New York, New York
June 5, 2013

KELLEY DRYE & WARREN LLP

By: _____
Eugene T. D'Ablemont
Robert E. Crotty
Taraneh J. Marciano
101 Park Avenue
New York, New York 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
edablemont@kelleydrye.com
rcrotty@kelleydrye.com
tmarciano@kelleydrye.com

*Attorneys for Defendants*

-10-